We're going to go on to case number two and that case is appeal 22-1501 John Doe v. Adam Gray and Mr. Brown Good morning, your honors. Attorney Russell Brown on behalf of the plaintiffs, appellants John Doe and AB. Just briefly in regards to the facts, Mr. Doe was born a female and has since identified at least until the age or since the age of 19 but prior has identified as a as a male. When he was 19 years old he had the breast removal surgery however up to and including today's date he has not had any formal surgery modifying or altering his genitalia. He is married to AB where AB has several children three and there is a one child that is in common that was ultimately adopted by John Doe. Throughout all of the relevant time herein AB did not know that Mr. Doe was born female and did not have male genitalia. She did however know that his his name was Barbara, is that correct? Excuse me, your honor. She did however know that John Doe's name when she married him was Barbara, is that so? I do not believe that the evidence supports that judge. There was some she knew of Mr. Doe when they were younger as they ran in some similar circles and were close in proximity in Michigan of where they grew up. However, she had heard the name Barbara. I believe that the evidence in the record is that she's heard the name Barbara but did not know that he was born Barbara at the time. Did John Doe legally change his sex? That is, did he go through a legal process to have his birth certificate amended or take any step to officially change his sex as a legal matter? Because if he did, his transgender status, would it be a matter of public record? Judge, I believe that the evidence was at the deposition that John Doe identified on his license as being male but however has not done anything to go through and legally change his birth certificate or social security card. However, his driver's license, he does identify as male. So child, is the child in common between John Doe and AB? It's not our app? That is correct. So in February of 2018, where all of this kind of jumps off, defendant Purdy is a case manager at the Indiana Department of Child Services and officer Gray is an officer with the Stark County Sheriff's Department. There was an allegation that RM, who is a child of AB's, had been neglected. He was allegedly kicked out of his house or kicked out of the house and was living with a friend and that John Doe and AB was not providing any financial support for him or any food, shelter, etc. During that investigation, John Doe and AB were ultimately arrested and charged with neglect of a dependent as a level six felony in the state of Indiana and also failure to provide support for a dependent, also a level six felony in the state of Indiana. Both of those charges were ultimately dismissed. In Stark County, however, during that arrest, defendant Purdy was called in because there were at least three children that were in the home at the time of the arrest. So defendant Purdy and the Indiana Department of Child Services were called in and removed the children from the home, attempting to find them placement while John Doe and AB were incarcerated. During that time, Ms. Purdy made a phone call to April Moore, who was the maternal aunt of the children, and during that phone conversation told Ms. Moore, you know she's a girl, right? Or you know he's a girl, right? Referring to John Doe. Additionally, Ms. Purdy is in the home of Suzanne Brewer. That's where RM was staying. That's the friend that he was staying with during the relevant time. And when Ms. Purdy was in the home of Ms. Brewer, started talking about the interactions that John Doe was having with defendant Gray in the Stark County Jail and told Ms. Brewer and the children that John Doe was born female and did not have male genitalia. One of the children, the minor children of AB's, was there, witnessed that, heard that, and she did not know that Mr. Doe was born female and did not have male genitalia. For all intents and purposes, she believed that he was in fact biologically male. John Doe, excuse me, defendant Gray interviewed, and this interview was captured on video and audio of AB during the interrogation or her interrogation of the underlying offenses. During that interrogation, defendant Gray told AB that Mr. Doe was born female, his legal name was Barbara B, and that he did not have male genitalia. AB did not know that. That was the first time that AB was told that Mr. Doe was not male. How old were they? You said earlier that they'd known each other as young people. How old were they when they were young people? How old were they at that time? Yes, Your Honor, I believe that it was during the teenage years, middle school and high school. Again, they were in not the same township or not the same school system, but very close, like the next town over or a couple towns over. So they kind of ran in some of the same circles. So the standard of... And at the time that they were running in the same circles, will the record tell us how John Doe defined himself? Yes, Your Honor. During the entire time that Mr. Doe was in his childhood, he went by his middle name, which is his middle name is Kurt, which is... And that's his legal middle name, which is more male, recognized as being a male name, as opposed to his legal name of Barbara. And so that's all what AB knew him as was Kurt. And that's still the name that he associates with today amongst friends, as goes by his middle name, Kurt. Mr. Brown, would you address the qualified immunity issue? Yes, Your Honor. And that's really the crux of this argument. Yes, it is. And in 2018, what is the state of the law on the issue of keeping gender identity hidden from a partner? Judge, honestly, there is not... There isn't any. There is not any case. Right. So where does that leave us with qualified immunity? Respectfully, Your Honor, we believe that the saucier two-part test that was established by the U.S. Supreme Court in regards to qualified immunity, one, was a constitutional right violated, but two, was it a clearly established constitutional right? The law of this circuit does not... The relevant inquiry of whether or not it was a clearly established right is whether or not it was clear to a reasonable officer that the conduct in a similar situated... That conduct was unlawful in the situation that he was confronted with. If there's no controlling precedent, which there is not, the court looks at relevant case law, quote-unquote, to determine whether or not there was such a clear trend in case law that we can say with fair assurance that the recognition of the right by controlling precedent was just a matter of time. And that's this court in Jacobs v. City of Chicago. Go on. This circuit quoted in Phillips v. Community Insurance Corporation, a case directly on point is not required. Officials can still be put on notice that their conduct violates clearly established law in a novel factual circumstance. So we'll concede, Your Honor, that nationwide there is no case on point specifically about a individual's gender identity being a clearly protected right of being disclosed to a partner. However... Especially, and let's keep in mind, we're talking about a transgender person who's under criminal investigation for child neglect and abuse. Not abuse, Judge. He was under... There was... The charges were child neglect. Well, okay. Well, there's a little redundancy there. Well, in the state of Indiana, there are separate crimes for abuse as opposed to neglect. So respectfully, I do believe that there's a distinction with a difference. Will the record tell us why the plaintiffs delayed the request to amend the complaint to make clear that the issue was sexual identity rather than sexual preference? You're talking here about, in your argument, about sexual identity, but that request was made late. It was, Your Honor. I believe the record would indicate that it was made approximately 18 months after the original complaint was filed and after the disclosive discovery. However, when you look at the original complaint, the facts and the allegations are more that Defendant Purdy and Defendant Gray disclosed the fact that John Doe was born female. The complaint used the term sexual preference as opposed to the term gender identity. But it didn't... It doesn't change the facts of what the underlying allegations were. So, and I want to... I guess I want to focus on the governmental interest and why this information was disclosed. Keep in mind the time, please. Yes, Your Honor. Thank you. Thank you. Um, there is absolutely no compelling, any legitimate government interest in this case that Defendant Purdy or Defendant Gray can put their hands on of why they disclosed this information. During their investigation, they learned the information. That's fine. But to disclose it to a potential foster person, a foster parent, to disclose it to minor children of the family, to even disclose it of the spouse, there's absolutely no reason for that whatsoever. The only reason that a jury could infer if this case were to go to a trial is that it was done for harassment, to embarrass and or to ridicule Mr. Gray. And that is supported by Defendant Gray's Facebook posts publicly commenting on transgenders using public restrooms and how that shouldn't be allowed. And so we believe that there is a material fact of dispute that a jury can use and can rely upon to determine whether or not this was a clearly established right to determine whether or not probable cause was established on the other counts. So we respectfully request Your Honors to remand this back to the District Court, overturn the decision to grant summary judgment and allow this matter to proceed to trial for a jury to determine. Thank you very much. Thank you. May it please the Court. Benjamin Jones for Appellee Katherine Purdy. I'm going to focus my time this morning on the right to privacy and defer to counsel for Detective Gray and Stark County Sheriff on the arrest. The District Court correctly entered summary judgment for the defendants on the right to privacy claim because I think as counsel conceded in 2018 there was no clearly established right to privacy in one's transgender identity as to their spouse, their spouse's children, or foster placements. Without that sort of clearly established case law it would not have been apparent to Katherine Purdy or Detective Gray that making those disclosures, as Your Honor mentioned, within the context of criminal investigation and a child welfare investigation was unconstitutional. Can you help me with this? What possible reason do you think the police and child services have for conveying the information about those genitals to anyone in the course of the investigation? I mean it's clearly information that the police needed to know if they were investigating possible child molestation charges, but wouldn't it have been more prudent to keep the information to themselves and see what the affected children knew about Doe's body? Does, does the record reveal any rationale? I don't think the, the record isn't clear on the rationale, but I think as your, the point Your Honor is getting to and I think what the record shows is that Detective Gray at the time was investigating allegations not just of Doe and his children. And so within the context of that investigation, asking questions of the spouse about what the spouse knows about her husband and his physical attributes could very well be relevant. It's not uncommon for investigators to ask a wide range of questions in the scope of their information gathering. And I think this court noted in Wolf that restrictions on investigators' ability to ask questions inherently inhibits the ability to investigate and determine whether mule's violations or criminal acts have occurred. And then within the context of child welfare, it's incumbent on the family case manager and the child welfare services to make sure that the placement of the children in a foster environment is placing the children into a supportive environment that can provide the care and meet the needs of those children. And so it's highly relevant to, to determine whether the environment that they're placing these children into is welcoming and accepting of alternative identities and of alternative home environments to avoid a foster situation that's going to drive a wedge either between the foster parents and the children or the children and their biological parents. Because of course the presumption is ultimately a reunion between the, the removed children and their, their biological parents. And so there are governmental interests at stake in, in disclosing that information. And of course I think responding to a point that the subjective intent of course of the, of the individual employees is not a relevant consideration. But that's all to say of course that getting into that balancing test and identifying the government interest only comes into play if there's a predicate privacy interest in the first place. And not only, given the concession that there was no clearly established right, I think they also haven't shown a clear trend in the case law that would show a right to privacy within this context, within the course, within the context of a spouse, spouse's children, foster environment. Citing two cases expanding the rights of homosexual Americans to live and doesn't make it clear to governmental actors that disclosing that information would have been constitutional. Instead the court said it has to be particularized to the facts of the case and none of the, none of those cases would certainly show or put the governmental actors on notice that what they were doing was unconstitutional. And without that kind of information qualified, I mean the, it's not clearly established and would not have been certainly established. And of course that is the prong this court should resolve the case on. It should not reach into these underlying questions of whether the privacy right exists. I think the Supreme Court explained in Al-Qaeda and Pearson that when faced with a ready and obvious lack of clearly established right, that's the way to resolve the case. The court shouldn't expend resources digging into the underlying constitutional questions. And of course that's consistent with the ideas of judicial restraint and constitutional avoidance. And so if there are no further questions, I defer to counsel for Detective Gray. Thank you. Thank you. Good morning. May it please the court, my name is Kaitlyn Crispin on behalf of Defendant Appellees Adam Gray and Stark County Sheriff's Department. I wanted to reiterate and say that everything that my co-counsel has said about the right to privacy applies equally to Detective Gray in terms of the lack of clearly established right. And as your honor mentioned, it was in the course of an investigatory interview. And that was for the purpose of investigating sexual misconduct, which is a clear, strong public state interest. Counsel spoke a little bit about the arrests. And as your honors know, the claims that were asserted against Detective Gray include a false arrest claim for both A.B. and John Doe. And those were for the neglect of a dependent and non-support of a dependent. Opposing counsel mentioned that the charges were dismissed, but those charges were dismissed via a deferred prosecution agreement. They were not proven innocent of those charges. And in their brief, their appellant brief, appellants emphasize text messages that they allege create an issue of fact for this court. In particular, they say that the text messages show that R.M. was only reporting this incident in order to avoid runaway charges. And also that there was text from A.B. that stated that she did not kick him out. Well, the District Court correctly determined that what text messages Detective Gray had or did not have was not material because they were not outcome determinative. In other words, the information that were in the text messages were gathered by Detective Gray from other sources. That was the interview of R.M., the child who was alleged to be abandoned. And then the letter from the foster parent or the foster parent who was staying at Suzanne Brewer. And so all of the facts considered and the totality of the circumstances established that probable cause existed. There were texts that showed that Doe said for R.M. not to leave the house, not to come home, and to stay at the Brewer house, that A.B. had told R.M. that whatever Doe said was how it was going to be and to deal with it, that A.B. only brought food once to the house, that A.B. and John Doe did not provide any money, that R.M. had picked up his clothes, and John Doe and A.B. did not contact the school, DCS, or the police about R.M. And as I had mentioned, this was corroborated by that letter from Suzanne Brewer. Again, that showed that he was staying at her house. He had dropped him off to pick up the clothes, that no money was given to her to care for R.M. A.B. didn't even speak to him speak to about R.M. and the amount of food. And so based on the totality of circumstances, the district court correctly determined that there was probable cause and no constitutional violation. Ms. Christman, what additional discovery would have been required if the court had allowed the very late amendment to the complaint? Your Honor, I don't believe that any additional discovery would be needed in terms of the false arrest claim or even the 14th Amendment right to privacy claim. I think the record is clear, as co-counsel had mentioned, that there is no clearly established right and all of the information that plaintiffs allege support the lack of probable cause is already in the record. But as I had mentioned previously, the record. And there is also another claim asserted against Detective Gray and the Stark County Sheriff's Department. They are state law claims, particularly intentional infliction of emotional distress, both in Detective Gray's individual and official capacities. The individual capacity in the brief and the district court do acknowledge that Detective Gray was acting within the scope of claims cannot be asserted against him. And so the district court was correct in entering summary judgment on that claim. The official capacity claim also deals with the law enforcement immunity. Appellants allege that he was not enforcing or adopting the law when the disclosure was made during an investigation. The fact that appellants admit that it was during an investigation is a law enforcement activity entitled to immunity. And the only remaining claim was the if there is no underlying tort, then there cannot be any liability under respondeat superior. So if your honors have no further questions, I will yield the rest of my time. No. Thank you. Thank you very much. Mr. Brown. Thank you, Your Honor. We can. Okay. Thank you, Judge. Appreciate it. Just a couple of things quickly to address. First and foremost, during an investigation, a detective investigates, asks questions that does not require disclosure of information. Him merely asking a B of what she knows about John Doe and his gender identity or indoor transgender status, whether or not he has male genitalia or not. That's perfectly fine. Those are questions during an investigation. But there is absolutely no reason to disclose the information. I think that that is a distinction with the difference that the defendants are talking about that they were supporting a government interest. Disclosing this information is not there is no governmental interest of disclosing this information to anybody. This is extremely private information. As this court in Wolf discussed, sexual is very private information that enjoys constitutional protection. The other thing I want to talk about briefly in regards to the probable cause and the text messages that are of the record. Those text messages directly contradict the initial reports that RM and Ms. Brewer gave to Detective Gregg. So those text messages, again, indicate that the only reason why RM was making these allegations was so he wouldn't be charged as a runaway and that AB told him to come back home and you're grounded and sleep on the couch. So we do believe that that does create a material fact. Lastly, if this court finds that there was not a clearly established right of Mr. Doe's gender identity to be disclosed, Mr. Doe was asking that this court establish that in this case. So anybody going forward that is in his similar situation does not have to endure the embarrassment, the ridicule, and the disclosure of such private information for no reason. We do believe that your honors should overturn the district court because qualified immunity should not excuse the defendant's conduct. However, if your honors do not agree, let this case be the last one. Thank you. Thanks to both parties and the case will be taken under advisement. The court is going to take a 10-minute break at this time.